IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE:
DB HOLDINGS LIQUIDATION, INC., *et al.*,

    Debtors.

    : Chapter 11
    : Bankr. Case No. 16-12435 (CSS)

KOMODO CLOUD, LLC,

    Appellant,

v.

DB HOLDING LIQUIDATION, INC. f/k/a
DIRECTBUY HOLDINGS, INC. and CSC
GENERATION INC.,

    Appellees.

    : Civ. No. 17-605 (GMS)
    : Civ. No. 17-606 (GMS)

## MEMORANDUM

### I. INTRODUCTION

Presently before the court are the appeals of Komodo Cloud, LLC ("Appellant") from two decisions of the Bankruptcy Court, entered in the above-captioned debtors' ("Debtors") chapter 11 cases. The first decision on appeal (B.D.I. 587)[1] ("Withdrawal Order") granted Debtors' motion to voluntarily withdraw (B.D.I. 494) ("Motion to Withdraw") the Debtors' emergency motion for injunctive and declaratory relief (B.D.I. 406) ("Emergency Motion"),[2] which sought, *inter alia*, to compel Appellant's performance under a Master Services Agreement ("MSA"). Whereas the Bankruptcy Court permitted the Debtors to withdraw the Emergency Motion, that relief was "with prejudice," as requested by Appellant. However, the Bankruptcy Court denied Appellant's request for an award of its costs and fees under the MSA as the "prevailing party,"

---

[1] The docket of the chapter 11 cases, captioned *In re DB Holdings Liquidation, Inc.*, No. 16-12435 (CSS) (Bankr. D. Del.), is cited herein as "B.D.I.___." Appellant's appendix, Civ. No. 17-605, D.I. 13, is cited herein as "KA___." CSC's Supplemental Appendix, Civ. No. 17-605, D.I. 16, is cited herein as SA-___."

[2] The Emergency Motion was filed under seal with the Bankruptcy Court. (B.D.I. 406). A courtesy copy was delivered to this court on September 12, 2017. (Civ. No. 17-605, D.I. 14).

1

and for this reason, Appellant has appealed the Withdrawal Order. (Civ. No. 17-605, D.I. 1). The second decision on appeal (B.D.I. 589) ("Compel Order") denied Appellant's *Objection to Alteration of Assumption and Assignment Procedures Without Notice and Motion to Deem Komodo Cloud's Executory Contracts Assumed and Assigned or, Alternatively, to Compel Assumption and Assignment* (B.D.I. 532) (the "Motion to Compel"). (Civ. No. 17-606, D.I. 1). For the reasons set forth below, the court will affirm both decisions. Accordingly, the motions for leave to withdraw as counsel to the Debtors in these appeals, filed by Cole Schotz P.C. (Civ. No. 17-605, D.I. 20; Civ. No. 17-606, D.I. 21) ("Motions to Withdraw as Counsel"), are each denied as moot.

## II. APPEAL OF THE WITHDRAWAL ORDER

### A. Background

DirectBuy was a members-only buying club that had 178,431 members on the petition date. Komodo was one of the Debtors' contract counterparties pursuant to the MSA that set forth the terms and conditions that would govern future agreements between Komodo and the Debtors, including, but not limited to, a so-called "5 Year FlexCompute Transition" agreement (the "FlexCompute Contract") entered into by and between DirectBuy and Komodo. (*See* Civ. No. 17-605, D.I. 14 (MSA, Exh. A to the sealed Emergency Motion)). The MSA provides for a ten-day grace period for the Debtors to cure any alleged breach (*id.* at § 5.3(i)); mandatory mediation if there is a dispute under the contract (*id.* at § 11.16(a)); and requires Appellant to seek injunctive relief if it believes its intellectual property rights are being violated (*id.* at §11.16(b)). The MSA also provides that "[i]n the event of any proceeding or lawsuit brought by [Appellant] or Customer in connection with this Agreement, the prevailing party shall be entitled to receive its costs, expert witness fees, and reasonable attorneys' fees, including costs and fees on appeal, in addition to any relief granted by a court of law." (*Id.* at § 11.17).

2

On November 1, 2016, Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On February 14, 2017, the Bankruptcy Court entered an order approving the sale of substantially all of the Debtors' assets to appellee CSC Generation, Inc. ("CSC") (B.D.I. 377) (the "Sale Order"). (SA-14). The Sale Order provided for a designation rights period during which CSC could determine whether it wished for the Debtors to assume and assign certain contracts and leases to CSC.

On the evening of February 23, 2017, Appellant sent a cease and desist letter to CSC via email, alleging that the Debtors and/or CSC had breached their agreements by transporting "clones" of Appellant's software to other service providers. (*See* KA9, ¶ 27). The following day, CSC sent an email to Appellant explaining that neither CSC nor the Debtors had breached Appellant's contracts with the Debtors, but that CSC would take precautionary measures to ensure that Komodo's concerns would be resolved. (*See id.* ¶ 29). The parties appear to dispute what happened next. CSC says that Appellant engaged in "self help," in violation of the terms of the MSA and state law remedies. (KA258, 5/8/17 Hr'g Tr. at 43:5-9). Specifically, CSC alleges Appellant took actions to destroy a network connection between the Debtors' server environment and CSC's corporate headquarters, that "had a dramatic effect on the Debtors' and CSC's operations," and that "neither the Debtors nor CSC were able to effectively communicate with Appellant on February 24th or during the following weekend." (KA9-11, ¶¶ 28, 34-36). Appellant concedes that it took steps to restrict [Debtors'] access to [Appellant's] systems" and "acknowledges that it may have caused some temporary disruptions." (*See* SA-76, B.D.I. 430). Specifically, Appellant acknowledged a brief disruption to Debtors'/CSC's Citrix access but contends that this disruption only impacted 25 minutes a single business day and was corrected within 2 minutes of receiving a help desk ticket. (*See* Civ. No. 17-605, D.I. 12 at 4; B.D.I. 416, Menon Decl. at ⁶ 6).

The following Monday, February 27, 2017, Debtors filed the Emergency Motion (KA1-100), seeking a permanent mandatory injunction on the basis that Appellant was allegedly destroying Debtors' ongoing business operations both directly by interfering with the Debtors' ability to prepare monthly operating reports and indirectly by preventing Debtors from performing under a transition services agreement with CSC. (B.D.I. 406). Debtors filed four declarations in support of their argument that business operations were being disrupted and that Appellant was not helping to address those problems. (B.D.I. 407-410). The Bankruptcy Court scheduled a telephonic hearing on the Emergency Motion for February 28, 2017, and, at the completion of that hearing, the Bankruptcy Court set an evidentiary hearing for March 2, 2017. At the March 2 hearing, the Bankruptcy Court delayed the hearing to allow the parties to engage in settlement discussions, and, by the end of that day, the parties mutually agreed to a further adjournment of the evidentiary hearing to March 14. Due to inclement weather, which resulted in the closing of the Bankruptcy Court on March 14, and a scheduling conflict, the evidentiary hearing was adjourned again to April 5, 2017.

CSC argues that, during the pendency of the adjournments, circumstances changed, leading to the decision to withdraw the Emergency Motion. "Most notably, after the Emergency Motion was filed, CSC worked to make numerous specific workarounds and Komodo, by its own admission, began working with the Debtors to ameliorate certain disruptions." (Civ. No. 17-605, D.I. 15 at 9).[3] Appellant conditioned its consent to withdrawal of the Emergency Motion on payment of its attorneys' fees under the MSA. Debtors/CSC sought withdraw the Emergency

---

[3] *See* SA-76-77 ("DirectBuy has identified issues, Komodo Cloud has worked diligently to eliminate any business disruptions that the restricted access caused.") (Komodo's response to Emergency Motion); KA142-43, 2/8/17 Hr'g Tr. 6:24-7:2 ("[T]o tle extent that there are any operational issues that have been brought to our attention, we've attempted to work then and correct them.") (Komodo's counsel); KA254, 5/8/17 Hr'g Tr. at 39:22-25 (B.D.I. 594) ("We sought to withdraw the motion when things had worked out well enough, shaken out well enough that CSC could kind of keep the business going and we didn't need the relief anymore.") (Debtors' counsel).

4

Motion without prejudice and with each party bearing its own costs. (B.D.I. 494-95). On May 8, 2017, the Bankruptcy Court held a hearing and ruled that the Emergency Motion could be withdrawn but only with prejudice. (KA274, 5/18/17 Hr'g Tr. at 59:2-7). With respect to Appellant's request for attorneys' fees under the MSA, the Bankruptcy Court stated:

> With regard to whether Komodo was the prevailing party, I can't believe that it's appropriate to make that finding. I don't believe the facts and circumstances support them being deemed the prevailing party. If someone brings a motion and for whatever reason, circumstances, et cetera, change and they withdraw that motion, that doesn't mean that the other side was the prevailing party. I think some affirmative finding on the merits in favor of one of the parties is necessary for the court to find that party was the prevailing party under the contract.

(KA272-74, 5/8/17 Hr'g Tr. at 57:16-58:1 & 59:8-10).

### B.  Parties' Contentions

Appellant argues that the Bankruptcy Court correctly determined that permission to withdraw the Emergency Motion should be granted only with prejudice. (*See* Civ. No. 17-605, D.I. 12 at 7-9). Appellant argues on appeal that, having obtained such a ruling, Appellant was the "prevailing party" in the proceeding, and therefore, under the broad fee provision of the MSA, Appellant was entitled to reimbursement of its reasonable attorneys' fees incurred in defending the Emergency Motion. (*See id.* at 9-12). According to Appellant, "[c]ourts interpreting the phrase ['prevailing party'] have repeatedly held that a dismissal with prejudice acts as an adjudication of the merits, which makes the other party a 'prevailing party' for purposes of recovering costs and/or attorneys' fees." (*Id.* at 10). Appellant argues that, while the Third Circuit does not appear to have addressed this issue, all other circuits considering the issue have reached the conclusion that a dismissal with prejudice is tantamount to a judgment on the merits, and a defendant obtaining such a dismissal must be considered a prevailing party. (*See id.* at 10-11).

5

CSC does not dispute that the Bankruptcy Court's grant of relief with prejudice was a proper exercise of its discretion. CSC argues that, under Federal Rule of Civil Procedure 41(a)(2),[4] the Bankruptcy Court had broad discretion to dismiss the action without ordering payment of Appellant's fees. (*See* Civ. No. 17-605, D.I. 15 at 13-14). CSC argues that the decision to deny an award of fees was a proper exercise of the Bankruptcy Court's discretion under the facts in this case, where Appellant admitted to causing a disruption in service, including subsequently to working with Debtors/CSC to resolve service issues, and where changed circumstances, including this change in Appellant's conduct, obviated the need for emergency relief and lead to withdrawal of the Emergency Motion. (*Id.* at 17). CSC further argues that Appellant "cites no case where a party was deemed the 'prevailing party' under a contract due to a dismissal with prejudice" or in circumstances analogous to the Emergency Motion. (*Id.* at 18). "[Appellant] does not cite any decision that addresses a situation like the one here, where (i) an emergency motion (filed the next business day after a business disruption) was withdrawn due to changed circumstances, and (ii) the trial court never made an affirmative ruling." (*Id.*)[5]

## C. Jurisdiction and Standard of Review

Pursuant to 28 U.S.C. § 158(a), district courts have mandatory jurisdiction to hear appeals "from final judgments, orders and decrees" and discretionary jurisdiction over appeals "from other interlocutory orders and decrees." 28 U.S.C. § 158(a)(1), (3). In reviewing the Bankruptcy Court's determinations, this court "review[s] the bankruptcy court's legal determinations *de novo,* its

---

[4] Federal Rule of Civil Procedure Rule 41 is made applicable to all adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7041. Bankruptcy Rule 7041 applies to contested matters (like the Emergency Motion) pursuant Bankruptcy Rule 9014 "unless the court directs otherwise." *See* Fed. R. Bankr. P. 9014(c) ("Except as otherwise provided in this rule, and unless the court directs otherwise, the following rules shall apply: . . . 7041.")
[5] CSC further argues that there is no meaningful relief that may be granted to Appellant at this time. According to CSC, even if Appellant is determined to be a "prevailing party," CSC – as a nonparty to the MSA – cannot be assessed any attorneys' fees under the MSA. At best, Appellant would have a claim against the Debtors' estates, but since the Debtors' chapter 11 cases have been dismissed, any such claim would be essentially meaningless. (*See* D.I. 15 at 2). Because the court affirms the Withdrawal Order, the court does not reach this argument.

factual findings for clear error and its exercise of discretion for abuse thereof." *See In re Trans World Airlines, Inc.*, 145 F.3d 124, 130-31 (3d Cir. 1998) (noting that both the Third Circuit and the district court "exercise the same standard of review") (internal quotations and citations omitted).

The parties dispute the issue on appeal and, therefore, dispute the applicable standard of review. According to Appellant, the issue on appeal is whether the Bankruptcy Court erred when it found that Appellant was not a "prevailing party" and, therefore, not entitled to attorneys' fees, because the dismissal with prejudice was not an "affirmative finding on the merits." (*See* Civ. No. 17-605, D.I. 12 at 1). Appellant argues that "the legal effect of a dismissal with prejudice is an issue of law to be reviewed *de novo*" but cites no authority. (*Id.*). According to CSC, the only issue on appeal is whether the Bankruptcy Court abused its discretion when it granted the motion to voluntarily withdraw the Emergency Motion and denied Appellants' attorneys' fees and costs. (Civ. No. 17-605, D.I. 15 at 3 (citing *Ockert v. Union Barge Line Corp.*, 190 F.2d 303, 304-05 (3d Cir. 1951)). As framed by CSC, the decision on attorneys' fees is not a governed by whether Appellant was the "prevailing party" in this proceeding under the MSA; rather, the Bankruptcy Court's decision on attorneys' fees is a matter of discretion somehow subsumed in the Bankruptcy Court's discretionary authority to permit withdrawal of the contested matter with prejudice. CSC cites no authority in support of its position either. "Whether a litigant is a 'prevailing party'" under a fee-shifting provision "constitutes a question of law warranting de novo review." *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (quoting *Dattner v. Conagra Foods, Inc.*, 458 F.3d 98, 100 (2d Cir. 2006) (*per curiam*)).

### D.    Discussion

Courts have "broad equitable discretion" in evaluating Rule 41. *In re Appleseed's Intermediate Holdings LLC*, 2012 WL 6629624, at *3 (Bankr. D. Del. Dec. 20, 2012) (citations

7

omitted). The text of the rule leaves no question that a court has discretion to fashion appropriate relief under the facts and circumstances of its case: "an action may be dismissed at the plaintiff's request only by court order, ***on terms that the court considers proper***." Fed. R. Civ. P. 41(a)(2) (emphasis added). As CSC points out, the Bankruptcy Court's discretion to grant or deny fees in this contested matter may be even broader than the discretion recognized under Rule 41 because (i) the Bankruptcy Court was not required to apply Rule 41, *see, e.g.*, Fed. R. Bankr. P. 9014(c) (stating that certain rules apply to contested matters "unless the court directs otherwise"), and (ii) § 105(a) of the Bankruptcy Code affords the Bankruptcy Court flexibility to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, including with respect to the terms on which it grants a motion to withdraw or dismiss, *see* 11 U.S.C. § 105(a). Even if the Bankruptcy Court were required to apply Rule 41(a)(2), its decision is well supported. This matter did not involve a complaint, but rather an emergency motion to compel performance. During the course of this contested matter, the parties exchanged no documents, took no depositions, and obtained no expert witnesses. Appellant has admitted to taking some action to disrupt service under the MSA, which is the basis of the Emergency Motion. When circumstances changed, including a change in Appellant's conduct that obviated the need for emergency relief, Debtors did not delay in moving to withdraw the Emergency Motion. Any prior delay appears attributable to the parties' engagement in settlement negotiations, attempts to work through the service disruption issues, or were otherwise largely out of the parties' control (*i.e.*, weather-related delays). Based on this record, the court would find no abuse of discretion in the Bankruptcy Court's decision not to award Appellant attorneys' fees. Absent the MSA's fee-shifting provision, the court's review would be limited to a review of the Bankruptcy Court's denial of fees for abuse of discretion, and there is no abuse of discretion on this record.

Contrary to CSC's arguments, however, Appellant's rights to recover its attorneys' fees

under the MSA in this case is not solely a matter of Bankruptcy Court discretion. The MSA is an enforceable contract,[6] with a provision expressly governing disputes thereunder. CSC cites no authority that would support the view that enforcing the MSA's fee-shifting provision is also somehow discretionary in the context of a Rule 41(a)(2) dismissal, or that such a fee-shifting provision is somehow unenforceable in the context of these bankruptcy proceedings. The Bankruptcy Court recognized that the MSA governed. Construing the fee-shifting provision, the Bankruptcy Court based its denial on its determination that "some affirmative finding on the merits in favor of one of the parties is necessary for the court to find that party was the prevailing party under the contract." (KA272, 5/8/17 Hr'g Tr. at 57:16-58:1). Appellant disputes that an affirmative finding on the merits in favor of one of the parties was required, yet the central issue of this appeal – whether Appellant is a "prevailing party" under the terms of the MSA – receives little attention in either party's briefing.

Appellant argues that "prevailing party" is a term of art frequently used in both contracts and fee-shifting statutes," and that, while the Third Circuit has not addressed this issue, "[c]ourts interpreting the phrase 'prevailing party' have repeatedly held that a dismissal with prejudice acts as an adjudication on the merits, which makes the other party a 'prevailing party' for purposes of recovering costs and/or attorneys' fees." (*Id.* at 10).[7] Appellant cites a Second Circuit decision, *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995), in support of this argument. However, *Chase* held that "[a] voluntary dismissal with prejudice is an adjudication on the merits *for purposes of res judicata.*" *Id.* (emphasis added). The Second Circuit has clarified that *Chase* does not support the assertion that simply "a dismissal with prejudice constitutes a decision on the merits." *EMI Blackwood Music Inc. v. KTS Karaoke, Inc.*, 655 F. App'x 37, 40

<hr>

[6] There appears no dispute as to the MSA's enforceability — the relief sought in Debtors'/CSC's Emergency Motion was based on the enforceability of that agreement. (*See* B.D.I. 406).

[7] This was also the extent of the "prevailing party" argument raised with the Bankruptcy Court. (B.D.I. 550 at 10).

(2d Cir. 2016). Other non-binding cases cited by Appellant on appeal were all decided in the context of various ***statutory*** fee-shifting provisions, which give courts discretionary authority to award attorneys' fees, as opposed to contractual fee-shifting provisions. Appellant does not cite a single case where a party was deemed a prevailing party under a contractual fee-shifting provision due to a dismissal with prejudice.[8] Appellant cites only one case (in its reply) that even involves a contractual fee-shifting provision, and that case sheds no light on whether the "prevailing party" definition is met in the context of a dismissal with prejudice.[9] For its part, CSC is content to ignore the MSA altogether and pretend that the Bankruptcy Court's decision to deny fees was entirely discretionary under Rule 41(a)(2). CSC offers no argument with respect to the legal standard for "prevailing party" and merely distinguishes the cases cited by Appellant under statutory fee-shifting provisions on their facts.[10]

---

[8] *See* Civ. No. 17-605, D.I. 12 at 9-12 (citing cases decided under discretionary statutory fee-shifting provisions). Appellant cites *Carter*, 759 F.3d at 166-67, where the court considered an award of costs under Fed. R. Civ. P. 54(d), which provides that costs – other than attorney's fees – shall be allowed to the prevailing party unless "a court order provides otherwise," and an award of attorney's fees under 42 U.S.C. § 1988(b), which governs proceedings in vindication of civil rights, and which provides that the "court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." Appellant also cites *Schwarz v. Folloder*, 767 F.2d 125 (5th Cir. 1985), in which the court reviewed whether granting claim dismissals prior to and during trial were an abuse of discretion under Rule 41(a)(2), whether costs (not attorneys' fees) should be awarded under Rule 54(d), and whether bad faith attorneys' fees should be awarded under the court's inherent equitable power, 28 U.S.C. § 1927, or Federal Rule of Civil Procedure 11. Appellant cites *Kona Enters, Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000), in which the court reviewed the district court's award of attorneys' fees under a Hawai'i statute for abuse of discretion. Finally, Appellant cites *Callaway Golf Co. v. Slazenger*, 384 F. Supp. 2d 735, 746-48 (D. Del. 2005), in which the court considered whether an award of fee was appropriate under the Patent Act, 35 U.S.C. § 285, and the Lanham Act, 15 U.S.C. § 1117(a). None of these cases involved a contractual fee-shifting provision like the one contained in the MSA, which provides that the prevailing party shall be entitled to reasonable attorney's fees.

[9] *See* Civ. No. 17-605, D.I. 19 at 5 (citing *SIGA Tech., Inc. v. PharmAthene, Inc.*, 67 A.3d 330 (Del. 2013)). *SIGA* merely states that, although litigants are normally responsible for paying their own litigation costs under the American Rule, "where a contract contains a fee-shifting provision, we will enforce that provision." *Id.* at 352.

[10] *See* Civ. No. 17-605, D.I. 15 at 18-20. In *Carter*, CSC contends, the appellate court deferred to the trial court's discretion in awarding fees under a statutory fee-shifting provision after a summary judgment motion had been granted, and it affirmed the lower court's finding that the plaintiff's case from the outset was frivolous. *See Carter*, 759 F.3d at 166-67 (finding that the trial court adjudicated the case on the merits, and there was no change in circumstances on the facts of the case); *id.* at 168 ("Plaintiffs' claims were frivolous from the outset, and required the County Defendants to litigate continuously (at taxpayer expense)). CSC argues that Appellant's reliance on *Schwarz* misses the mark because "the trial court permitted voluntary dismissal without costs *after six years of pretrial preparation*, without holding an evidentiary hearing or providing *any* reasons for its decision." CSC distinguishes the *Kona* case as involving the affirmation, under the abuse of discretion standard, of a trial court's decision to award fees under a Hawaiian statute after the trial court entered judgment for the defendants. Similarly, *Kona* is distinguishable in that it did not involve any change in circumstances and, importantly, the trial court made several findings, including

The MSA clearly states that it is governed by Indiana law. (*See* MSA at 10, § 11.1; *see also* 5/8/17 Hr'g Tr. at 43:7-9 (Debtors' counsel conceding that Indiana law governs the contract)). "Indiana adheres to the American rule that[,] in general, a party must pay his own attorneys' fees absent an agreement between the parties, a statute, or other rule to the contrary." *R.L. Turner Corp. v. Town of Brownsburg,* 963 N.E.2d 453, 458 (Ind. 2012). However, when parties have executed a contractual provision agreeing to pay attorney fees, such agreement is enforceable according to its terms unless the contract is contrary to law or public policy. *See Carter-McMahon v. McMahon,* 815 N.E.2d 170, 178 (Ind.Ct.App. 2004). Under Indiana law, like that of many states, the goal of contract interpretation is to is to ascertain and give effect to the parties' intent as reasonably manifested by the language of the agreement. *See First Fed. Sav. Bank of Ind. v. Key Mkts., Inc.,* 559 N.E.2d 600, 603-04 (Ind. 1990). "[I]f the language is clear and unambiguous, it must be given its plain and ordinary meaning." *Cabanaw v. Cabanaw,* 648 N.E.2d 694, 697 (Ind.Ct.App. 1995).

Looking to the plain and ordinary meaning of this fee-shifting provision, the language is very broad, encompassing "*any* proceeding" brought by either party ("Komodo *or* Customer") "*in connection with*" the MSA.[11] The provision is also mandatory: "the prevailing party *shall* be entitled to receive its costs, expert witness fees, and reasonable attorneys' fees …". (MSA § 11.17). However, the agreement does not define "prevailing party." Rather than apply the rules

---

dismissal for lack of subject matter jurisdiction and lack of standing, among others. *Id.* at 887-88. In *Smoot,* CSC argues, the plaintiff no longer wished to move forward with its complaint and sought to dismiss with prejudice. *Smoot,* 340 F.2d at 303. There was no change in circumstances in that case, and there was no award of attorneys' fees either. *Id.* at 303. In *Callaway,* the court refused to award attorneys' fees, despite finding that the defendant was the "prevailing party" under the relevant statute *after a jury trial and jury verdict. Calloway,* 384 F. Supp. 2d at 749. There was also no change in circumstances in that case and the claims that were voluntarily dismissed were justified, the court found, under the circumstances. *Id.* at 747 (stating that the movant failed to show by clear and convincing evidence that Callaway brought the suit in bad faith).

[11] Section 11.17 of the MSA provides: "Attorney's Fees. In the event of any proceeding or lawsuit brought by [Appellant] or Customer in connection with this Agreement, the prevailing party shall be entitled to receive its costs, expert witness fees, and reasonable attorneys' fees, including costs and fees on appeal, in addition to any relief granted by a court of law." (MSA § 11.17).

of contract interpretation, Appellant relies entirely on *Schwarz,* where, according to Appellant, "the court held a defendant obtaining a dismissal with prejudice must be considered a prevailing party to be consistent with the doctrine that allows such dismissals over the objection of the defendant in the first place." *(See* Civ. No. 17-605, D.I. 12 at 10-11). In *Schwarz,* the Fifth Circuit remanded a denial of costs and fees to the trial court to give its reasons for such denial. There, the Fifth Circuit said:

> Having already held that a dismissal with prejudice may be granted at any time in a lawsuit because it does not prejudice the defendant, we would be inconsistent to deny the defendant "prevailing party" status, since such a denial would be precisely the type of prejudice to the defendant that we claimed would not occur. Because a dismissal with prejudice is tantamount to a judgment on the merits, the defendant in this case … is clearly the prevailing party and should ordinarily be entitled to costs.

767 F.2d at 130. Importantly, *Schwarz* did not involve a contractual fee-shifting provision. Rather, *Schwarz* reviewed the court's denial of costs and fees under various statutory fee-shifting provisions, including denial of costs under Rule 54(d)[12] and denial of attorney's fees under Rule 41(a)(2). *Schwarz* is nonbinding and otherwise factually distinguishable from this proceeding.[13]

In *Reuille v. Brandenberger Construction, Inc.*, 888 N.E.2d 770 (Ind. 2008), the Supreme Court of Indiana interpreted a contractual fee-shifting provision in favor of the "prevailing party" – the precise issue on appeal here. The parties in that case had entered into an agreement for the construction of a new home. *Id.* at 771. The agreement provided that, in the event of a legal dispute, the "prevailing party" would be entitled to reasonable costs and expenses, including

---

[12] Federal Rule of Civil Procedure 54 is a discretionary statute governing judgment and costs, which provides that, "unless . . . a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." *See* Fed. R. Civ. P. 54(d)(1).

[13] CSC argues that Appellant's reliance on *Schwarz* misses the mark because "the trial court permitted voluntary dismissal without costs after six years of pretrial preparation, without holding an evidentiary hearing or providing *any* reasons for its decision." (Civ. No. 17-605, D.I. 15 at 18-19). CSC further argues that the appellate court in *Schwarz* recognized that the district court had significant discretion but remanded in order to permit the district court to furnish a brief statement of reasons. *Id.* Additionally, CSC argues, the facts of this case are easily distinguishable from *Schwarz*: significantly, in *Schwarz*, there was no change in circumstances and the request for attorneys' fees was due to alleged bad faith. (*Id.* (citing *Schwarz*, 767 F.2d at 128-29, 132)).

12

attorneys' fees. *Id.* Plaintiff Reuille filed a complaint against construction company alleging breach of contract, breach of warranty, and negligence. *See id.* Following mediation, the parties reached a settlement on all issues with the exception of fees, which issue was explicitly reserved for judicial resolution. *See id.* Like the MSA, the term "prevailing party" was not defined in the construction contract, so the Supreme Court of Indiana "turn[ed] to sources that reflect the ordinary meaning of the term at the time the contract was executed." *Id.* The court noted that, at the time the contract in *Reuille* was executed in 1997, Black's Law Dictionary defined "prevailing party" as:

> The party to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not necessarily to the extent of his original contention. The one in whose favor the decision or verdict is rendered and judgment entered.

*Id.* at 771 (citing Black's Law Dictionary 1188 (6th ed. 1990)). The *Reuille* court found "[t]his definition appears to contemplate a trial on the merits and entry of a favorable judgment in order to obtain prevailing party status" which approach was corroborated "by several Indiana court decisions issued shortly before the parties executed their contract." *Id.* at 771-72 (citing *Heritage v. House of Salem, Inc. v. Bailey*, 652 N.E.2d 69, 79-80 (Ind.Ct.App. 1995) (plaintiff is not a prevailing party where it obtained a preliminary injunction but where judgment ultimately was rendered for the defendant); *State Wide Aluminum, Inc. v. Postle Distribs., Inc.,* 626 N.E.2d 511, 516-17 (Ind.Ct.App. 1993) (State Wide is not a prevailing party under § 34-1-32-1(b) (now § 34-52-1-1) because it did not receive a judgment); *State ex rel. Prosser v. Ind. Waste Sys., Inc.*, 603 N.E.2d 181, 189 (Ind.Ct.App. 1992) (a favorable ruling on a motion is not a judgment allowing the recovery of costs as a prevailing party)). Advising that "contracting parties can readily agree to fee-shifting arrangements that are more prescriptive," the *Reuille* court found the contract before it to be nonetheless "straightforward and unadorned." *Id.* at 772. Based on the foregoing analysis, the Supreme Court of Indiana held that, "in absence of further definition [of "prevailing party"],

13

such a contract produces fees only when one party or the other wins a judgment." *See id.* at 771.[14]

In accordance with Indiana law, a court interpreting the MSA should look to sources that reflect the ordinary meaning of the term at the time the MSA was executed on January 3, 2014. The 9th edition[15] of Black's Law Dictionary defined "prevailing party" as "party in whose favor a judgment is rendered, regardless of the amount of damages awarded ... *successful party.*" Black's Law Dictionary (9th ed. 2009). This revised definition still appears to require "entry of a favorable judgment" in order to obtain prevailing party status. Here, no judgment was rendered with respect to the Emergency Motion – rather, it was withdrawn. Indiana cases continue to support an interpretation of "prevailing party" that requires entry of a favorable judgment on the merits.[16] The Bankruptcy Court's interpretation of "prevailing party" under the MSA is therefore consistent with Indiana law, and the Court will affirm the Withdrawal Order.[17]

---

[14] As the *Reuille* court further observed:

Aside from the dictionary and case law on which we rely, it seems apparent that the bright line approach these represent is the best for most litigants. The worst approach would be one in which "prevailing party" is treated with ambiguity or discretion, provoking litigation about who won the litigation, in addition to litigation over the appropriate amount of fees.

*Reuille*, 888 N.E.2d at 772.

[15] The 10th edition of Black's Law Dictionary was not released until May 2014.

[16] *See, e.g.*, *Boyer Const. Grp. Corp. v. Walker Const. Co., Inc.*, 44 N.E.3d 119 (Ind.Ct.App. 2015) (rejecting defendant's contention that it was prevailing party, where it successfully defended 98% of the claims and was found liable for only 2%, as defendant "did not assert (and therefore did not prevail upon) any counterclaims" and the only judgment entered was entered entirely in favor of plaintiff); *Muir v. McWilliams*, 66 N.E.3d 1011 (Ind.Ct.App. 2016) (unpublished) (rejecting defendants' contention that trial court's dismissal of the claims with prejudice met the definition of "prevailing party" where trial court never heard the merits of the claims and did not enter judgment in favor of defendants on the merits, but rather claims were dismissed as a result of defendants' bankruptcy).

[17] As the Third Circuit has observed, the Supreme Court has set forth some useful guideposts for determining whether a plaintiff is a "prevailing party" for purposes of fee-shifting statutes. *See Raab v. City of Ocean City, New Jersey*, 833 F.3d 286, 292 (3d Cir. 2016). In *Buckhannon*, the Supreme Court considered petitioners' request for attorneys' fees as the "prevailing party" under the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3613(c)(2) ("FHAA") and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12205 ("ADA"), but spoke broadly with regard to statutory fee-shifting provisions. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001). The Court noted that "numerous federal statutes" similarly authorized fee awards to the prevailing party and that the Court has "interpreted these fee-shifting provisions consistently." *Id.* at 600 & 603, n.4. "In designating those parties eligible for an award of litigation costs, Congress employed the term 'prevailing party,' a legal term of art." *See id.* at 603. *Buckhannon*'s analysis began with the "clear meaning" of the term:

Black's Law Dictionary 1145 (7th ed. 1999) defines "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded <in certain cases, the court will award attorney's fees to the prevailing party>. – Also termed successful party."

*Id.* at 603. According to the Third Circuit, the Supreme Court in *Buckhannon* distilled the following "threshold inquiries:" "(1) whether there is a 'material alteration of the legal relationship of the parties,'" and "(2) whether that

## III.    APPEAL OF THE COMPEL ORDER

### A.    Background

Because Appellant raises a series of objections based on the bid procedure and sale process,

the court reviews procedural history of the sale and the Debtors' rejection of Appellant's contracts.

On November 1, 2016, the Debtors filed a motion to authorize the sale of substantially all of their

assets (the "Sale") and approve procedures with respect thereto (B.D.I. 18) ("Sale Motion").  On

December 1, 2016, the Bankruptcy Court entered an order (B.D.I. 126) ("Bid Procedures Order")

approving bidding procedures with respect to the Sale.  The Bid Procedures Order also approved

the stalking horse asset purchase agreement (KA157) (the "Stalking Horse APA"), with Derby

SPV, Inc. (the "Stalking Horse Bidder").  The Stalking Horse APA defined "Assumed Contracts"

as those "Contracts set forth on Schedule 2.1(1) [of the Stalking Horse APA]; provided, however,

that, at any time prior to two (2) Business Days before entry of the Approval Order by the

---

material alteration is 'judicially sanctioned.'" *Raab*, 833 F.3d at 292 (quoting *Buckhannon*).  "Regarding the first inquiry, a plaintiff must receive at least some relief on the merits of his claim before he can be said to prevail.  This inquiry does not turn on the magnitude of the relief obtained." *Id.* at 293 (internal quotations and citations omitted). "Indeed, the Court has held that even an award of nominal damages will satisfy this test." *Id.* (citing *Buckhannon*, 532 U.S. at 604).  "Regarding the second inquiry, the material alteration of the legal relationship between the parties requires a 'judicial imprimatur on the change.'" *Id.* at 293 (quoting *Buckhannon*, 532 U.S. at 605).  The Court in *Buckhannon* rejected legislative history and policy arguments "given the clear meaning of 'prevailing party.'" *Buckhannon*, 532 US. at 607-08, 610.

  Other cours have looked to *Buckhannon*'s definition in construing contractual fee-shifting provisions.  *See, e.g., American Guard Servs., Inc. v. Management Information Technology Corp.*, 2011 WL 2940407, *4 at n.5 (C.D. Cal. Jul. 21, 2011) looking to *Buckhannon* as persuasive guidance in ascertaining the plain meaning of "prevailing party" in the context of contractual fee-shifting provisions and noting "other jurisdictions directly apply the rule in *Buckhannon* to contractual agreements for fees"); *Technidata Am., LLC v. SciQuest, Inc.*, 2009 WL 2922991 at *3 (D. Md. Sept. 9, 2009) also referring to *Buckhannon*).

  Although in the context of statutory fee-shifting provisions, the Third Circuit recognized: "[t]he Supreme Court has so far identified two resolutions that establish prevailing party eligibility: (1) judgments on the merits, and (2) court-ordered consent decrees (including settlement agreements enforced through consent decrees.)" *Singer Mgmt Consultants, Inc. v. Milgram*, 650 F.3d 223, 228 (3d Cir. 2011) (citing *Buckhannon*).  Here, the Withdrawal Order is neither.  The Withdrawal Order, permitting withdrawal of the Emergency Motion with prejudice, was neither an "enforceable judgment[] on the merits" nor a "court-ordered consent decree" that created the "material alteration of the legal relationship of the parties" necessary to permit an award of attorney's fees.  The Bankruptcy Court's interpretation of the MSA's fee-shifting provision is therefore also consistent with the Supreme Court's guidance statutory fee-shifting provision cases.

15

Bankruptcy Court, the [Stalking Horse Bidder] may amend Schedule 2.1(1) to remove any Contract therefrom or add any Contract thereto." (KA164).

On December 16, 2016, Debtors filed and served a cure notice (B.D.I. 220) (KA314). The cure notice informed contract counterparties that their contract "may be assumed and assigned" to a bidder for the Debtors' assets following the auction. *Id.* It also stated that the sale may result in the assumption and assignment of the "Assumed Contracts," which were defined as "those contracts and leases that the Debtors believe may be assumed and assigned as part of the orderly transfer of the Purchased Assets; however the Purchaser or Successful Bidder, as may be applicable, may choose to exclude certain of the Debtors' contracts or leases from the list of Assumed Contracts . . . causing such contracts and leases not to be assumed by the Debtors." (KA315). Finally, the cure notice reiterated that "nothing contained herein shall obligate the Debtors to assume any Assumed Contracts or to pay any Cure Amount." (KA317). The cure notice listed the cure amount for a single unnamed agreement with Komodo (described as "back-up services") as $255,343.66 (KA320). On January 10, 2017, Komodo filed a limited objection to the cure amount listed for its contract in the cure notice ("Cure Objection") (B.D.I. 274) (SA-001), stating that the proper cure amount was $391,409.26.

On January 18, 2017, the Debtors filed schedules to the APA (B.D.I. No. 290) (SA-20) (the "Stalking Horse APA Schedules"). Those schedules included a "Komodo Cloud Service Order for Backup Service between Komodo Cloud, LLC and DirectBuy, Inc. dated August 4, 2015," in the list of Assumed Contracts under Schedule 2.1 of the Stalking Horse APA but not the FlexCompute Contract or MSA (SA-28). On February 9, 2017, Komodo filed a limited objection to the proposed Sale (B.D.I. 356) (SA-98) (the "Sale Objection," and together with the Cure Objection, "Komodo's Sale Objections"). In the Sale Objection, Komodo stated (i) that it was counterparty to a single contract with the Debtors, the FlexCompute Contract, (ii) that this

agreement was identified as "potentially subject to assumption and assignment" pursuant to the cure notice, but (iii) that a different contract, and not the FlexCompute Contract, was identified in the Schedules to the Stalking Horse APA as a contract to be assumed (unless it is removed prior to the Sale Hearing). Through the Sale Objection, Komodo objected to the assumption and assignment of that different contract.

On February 10, 2017, three days before the sale hearing, the Debtors entered into an asset purchase agreement with CSC (the "APA," as amended). Under the APA, CSC was to acquire substantially all of the Debtors' assets. The same day, the Debtors filed a notice of successful bidder (B.D.I. 364) (KA328) (the "Successful Bidder Notice"), which declared CSC the successful bidder for the Debtors' assets. The Successful Bidder Notice included a clean copy of the APA and a redline marked against the Stalking Horse APA (KA331).

CSC and the Debtors negotiated the inclusion of section 6.20 of the APA, which provided that the Debtors would neither seek to assume nor reject the "Specified Contracts" until they were designated for assignment or rejection by CSC (the "Designation Provision"):

> With respect to the Contracts set forth on Schedule 6.20 (the "Specified Contracts"), Sellers covenant and agree that they shall neither seek to assume and assign nor reject any such Contract without the consent of Buyer for the earlier of (i) ninety (90) days from the Closing Date, (ii) ten (10) days prior to the date of any hearing on a motion to dismiss the Cases or (iii) the date on which the Court approves a disclosure statement for any Chapter 11 plan the Debtors may file in the Cases, but in no event earlier than March 31, 2017 (the "Designation Period"). During the Designation Period, Buyer shall have the right to designate any Specified Contract for (x) assumption and assignment to Buyer, in which case such Contract shall be deemed an Assumed Contract under this Agreement and Sellers and Buyer shall use reasonable efforts to effectuate such assumption and assignment at Buyer's expense, or (y) rejection, in which case the Sellers shall reject the Contract under section 365 of the Bankruptcy Code as quickly as reasonably practical.

(APA, § 6.20) (KA378). The MSA and FlexCompute Contract were designated as Specified Contracts. (APA, Schedule 6.20). None of Komodo's contracts were named as Assumed Contracts in Schedule 2.1(1) of the APA. The Debtors and CSC also executed the TSA to facilitate

an orderly transfer of the Debtors' assets to CSC. (APA, § 6.22) (KA378). The TSA requires the Debtors to provide CSC with the benefits of each of the Specified Contracts during the Designation Period. (APA, Exh. D).

On February 13, 2017, the Bankruptcy Court held a hearing to consider the proposed Sale to CSC (the "Sale Hearing"). Counsel to the Debtors represented that Appellant was "advised on Friday [February 10, 2017] that [Komodo's] agreement is going to be listed on that specif[ied] contracts list, which is the designated list of contracts that the buyer is still determining whether or not they want to have that agreement assumed and assigned to them." (*See* SA-166, 2/13/17 Hr'g Tr. at 21:17-24). Appellant appeared through counsel and reserved the right to object to (i) the matters raised in its Sale Objections, and (ii) the Designation Provision in the APA. Counsel for Appellant stated that he was aware of the Designation Provision, but requested additional time to review and possibly object to it:

> MR. PRINCE: Good morning, Your Honor. Thank you very much. I certainly don't want to hold up this process over what I think is a relatively technical matter, but I have not had a chance to see the – to view the revised order in detail, nor to review the revised schedules, because I believe they haven't been filed. So, if – I think my understanding is that the agreement with the buyer is that – well, there are two technical objections that I made. One was to the cure amount. I think that can be deferred to whenever I suspect that can be resolved. The other was whether the buyer would be assuming, essentially, what our – in our view, is an old, expired contract that's been superseded by something else. I think the buyer's proposal is to just put both of those on the list and deal with it later. I just haven't had a chance to review what that list means and what these designation rights are, because this is a big change from the prior agreement. So, with parties' agreement and Your Honor's consent, I would defer any objection to that nature of that change to some later time, as well. I'd just like to reserve our rights to say that I don't know what those designation rights are or how they might affect my client, but to the extent that we weren't given notice and an opportunity to object to them, I'd like to reserve that right to object at some future time.

(SA-168, 2/13/2017 Hr'g Tr. at 22:14-23:15)

On February 14, 2017, the Bankruptcy Court entered an order approving the Sale to CSC (the "Sale Order") (B.D.I. 377) (KA467). The Sale Order reserved Appellant's rights to object to "matters raised in [Appellant's Sale Objections] and to the designation procedures in [section] 6.20

of the [APA]" (the "Reservation"). (KA478, ¶ 2). No party appealed entry of the Sale Order, which is now final. The Sale Order, which approved the APA, made clear that the Specified Contracts would not be assumed and assigned unless and until the Debtors and CSC decided for such contracts to be assumed. (KA491-92, ¶ 28 ("Specified Contracts shall not be assumed and assigned pursuant to this Order and the [APA] unless and until (i) the Debtors file a notice . . . stating that a Specified Contract is being added to the list of Assumed Contracts in accordance with Section 6.20 of the [APA] (which notice shall be served on the affected parties . . . .")). The Sale Order also specifically approved the "sale of the Purchased Assets to the Purchaser (including the rights under Section 6.20 of the Purchase Agreement to move Specified Contracts to Assumed Contracts under the Purchase Agreement)." (KA478, ¶ 7).

On February 27, 2017, the Debtors filed the Emergency Motion, alleging that Appellant interfered with the Debtors' and CSC's access to data that was hosted on a cloud network provided by Komodo. As noted above, after several adjourned hearings, settlement discussions, and a change in circumstances, on March 31, 2017, the Debtors and CSC jointly filed the Motion to Withdraw. (B.D.I. 494) (SA-108).

On April 13, 2017, Appellant filed the Motion to Compel, which objected to the Debtors' alteration of the assumption and assignment procedures without notice, and which sought relief from the Bankruptcy Court in the form of an order deeming its executory contracts assumed and assigned, or, alternatively, compelling assumption and assignment of those contracts. (*See* B.D.I. 532) (KA560). Appellant filed declarations in support of the Motion to Compel, including that of its Chief Technology Officer, Nigel Lambert (KA580) (the "Lambert Decl.") and its Director of Cloud Services, Jayan Menon (the "Menon Decl.") (KA590).[18]

---

[18] CSC argues that Appellant did not seek to move the Lambert Decl. or the Menon Decl. into evidence at the May 8, 2017 evidentiary hearing on the Motion to Compel.

19

On May 8, 2017, the Bankruptcy Court held an evidentiary hearing and issued an oral decision denying the Motion to Compel. (KA620-25, 5/8/2017 Hr'g Tr. at 33:8 to 38:25). The Bankruptcy Court found that the relief that Komodo requested in the Motion to Compel was unavailable. In denying the Motion to Compel, the Bankruptcy Court found that "you cannot have assumption of an executory contract without court approval through an order" and that a bankruptcy court lacks "the authority to compel assumption of [Komodo's] executory contracts." (*Id.* at KA621, 34:2-3). The Bankruptcy Court noted that debtors should "be given wide latitude in determining what executory contracts or leases to assume or reject. . . . It's really one of the most powerful tools the debtor has under Chapter 11 to fix bad business decisions." (*Id.* at KA625, 38:12-15). The Bankruptcy Court also made clear that its decision had no impact upon any claims that Komodo might have against CSC or the Debtors under applicable law. (*Id.* at KA624, 37:20-24). On May 10, 2017, the Bankruptcy Court issued the Compel Order, denying the Motion to Compel. (B.D.I. 589) (SA-144).

On April 30, 2017, CSC gave notice to the Debtors that it was designating Appellant's contracts for rejection, and the Debtors filed and served on Komodo a Notice of Rejection (B.D.I. No. 563) (SA-117) ("Rejection Notice") in accordance with procedures governing the rejection of contracts that were previously approved by the Bankruptcy Court. (B.D.I. 278) (SA-7). On May 10, 2017, Appellant filed an objection to the Rejection Notice. (B.D.I. 590) (SA-145). In addition to procedural arguments related to the effective date of rejection, Komodo asked the Bankruptcy Court to estop the Debtors from rejecting its contracts for "the reasons stated in Komodo Cloud's [Motion to Compel]." (*See* SA-146). On May 25, 2017, the Bankruptcy Court rejected Appellant's objections and entered an order approving the rejection of its contracts as of May 1, 2017 (B.D.I. 631) (SA-155) ("Rejection Order"). Komodo did not appeal the Rejection Order, which became final and non-appealable.

20

On June 14, 2017, Debtors filed a motion to dismiss their Chapter 11 cases (B.D.I. 662) ("Motion to Dismiss"). Appellant did not object to the Motion to Dismiss. On July 19, 2017, the Bankruptcy Court entered an order granting the Motion to Dismiss (B.D.I. 715] ("Dismissal Order"). The Dismissal Order provides for the dismissal of the Chapter 11 Cases, without a further order, upon the filing of a certification from Debtors' counsel that certain administrative expenses and fees owed to the Office of the United States Trustee were paid.

## B. Parties' Contentions

Appellant raised three issues on appeal: (1) whether the Bankruptcy Court erred by allowing Debtors to assign their executory contracts with Appellant to CSC without first assuming them; (2) whether the Bankruptcy Court erred by allowing the assignment of the Appellant's executory contracts without notice to Appellant; and (3) whether the Bankruptcy Court erred in ruling that, as a matter of law, CSC could not be estopped from designating Appellant's contracts for rejection. (Civ. No. 17-606, D.I. 11 at 4). Appellant argues that, in conjunction with a court-approved "transition services agreement" and as interpreted by Debtor/CSC and the Bankruptcy Court, the Sale Order compelled Komodo Cloud to provide services to CSC pending assumption or rejection. (*See id.* at 17). Appellant further argues that Debtors changed the assumption/rejection procedure without proper notice. According to Appellant, it was induced not to object to these procedures or file a motion to compel assumption of its contracts under § 365(d)(2) of the Bankruptcy Code. (*See id.* at 19-20). Finally, while not entirely clear, it appears that Appellant seeks to estop the Debtors from rejecting its contracts (or, implicitly, to force the assumption and assignment of its contracts).

Conversely, CSC argues that the Motion to Compel sought extraordinary and unprecedented relief of "deemed" assumption. (*See* Civ. No. 17-606, D.I. 14 at 4). CSC argues that it is "axiomatic as a matter of bankruptcy law that not all of a debtor's contracts need to be

assigned to a purchaser. Indeed, expensive contracts that weighed down a debtor and contributed to its bankruptcy filing are among those that not only can, but ordinarily should, be rejected" – which, CSC asserts, is what happened here. (*See id.* at 1). CSC argues that there is no merit to Appellant's argument that the Bankruptcy Court required Appellant to perform for CSC prior to the rejection of its contracts, and that, at all times, Appellant was operating under a contract with the Debtors. (*See id.* at 27). CSC disputes that there could have been any violation of due process based on a change in procedures, where Appellant had actual notice, reserved its rights to object, and exercised those rights. (*Id.* at 28-29). Regarding Appellant's argument that the Debtors and CSC can be "estopped from using [the] designation rights to reject [Appellant's] contracts," CSC argues that Appellant's failure to appeal the Rejection Order moots any controversy regarding the rejection of its contracts, and Appellant cites no authority to support such extraordinary relief. (*Id.* at 31-32).

### C.     Standard of Review

In reviewing the Bankruptcy Court's determinations, this Court "review[s] the bankruptcy court's legal determinations *de novo,* its factual findings for clear error and its exercise of discretion for abuse thereof." *See Trans World*, 145 F.3d at 130-31.

### D.     Discussion

### 1.     There Was No Assignment Without Assumption

Appellant contends that the Bankruptcy Court erred by allowing Debtors to assign their executory contracts with Appellant to CSC without first assuming them. (Civ. No. 17-606, D.I. 11 at 4). Appellant argues that "[s]ignificantly, section 365 does not provide a debtor with the ability to compel a counter-party to provide contractual services to a third party short of assumption and assignment." (*Id.* at 15 (citing 11 U.S.C. § 365); *see also In re JZ L.L.C.*, 371 B.R. 412, 422 (B.A.P. 9th Cir. 2007) ("the Bankruptcy Code … contemplates three alternatives with respect to

22

executory contracts in chapter 11 cases: assume, reject, or no action.")) While recognizing that "case law has evolved to recognize so-called 'designation rights,' which allow a debtor to sell the debtor's right to assume or reject executory contracts," Appellant argues that such designation rights "are not rights that allow a prospective purchaser to step into the shoes of the debtor before a contract is assumed or rejected, or rights to compel a counter-party to provide contractual services to a third party short of assumption and subsequent assignment. Rather, they permit a third party to instruct the debtor to assume and assign a contract that the third party wishes to acquire through a bankruptcy sale." (*Id.* at 17). Appellant argues that, "superficially, the Sale Order only approved the sale of designation rights" but "in conjunction with a court-approved [TSA] ... the Sale Order compelled Komodo Cloud to provide services to CSC pending assumption or rejection." (*Id.* at 17).

According to CSC, Appellant's argument that the Bankruptcy Court erred by allowing Debtors to assign the executory contracts with Appellant to CSC without first assuming them suffers from a number of defects. (Civ. No. 17-606, D.I. 14 at 26-28). The court agrees. The record supports that Appellant waived this argument by not raising it before the Bankruptcy Court. *See Union Pac. R.R. Co. v. Greentree Transp. Truck. Co.*, 293 F.3d 120, 126 (3d Cir. 2002). Even if Appellant had not waived the argument, the argument fails. As CSC points out, there simply was no order, document, or agreement effectuating an assignment. Appellant was, at all times, operating under a contract with the Debtors. A contract cannot be assumed by conduct. Appellant's argument that it was prejudiced by having to perform under the contracts pending their assumption or rejection must also be rejected by the court. If Appellant were prejudiced during the Designation Period, Appellant could have moved at any time to compel the Debtors to immediately decide whether to assume or reject its contracts, or for other protections or relief.

23

Appellant never made such a motion. Rather, Appellant waited two months and then filed the Motion to Compel.

Finally, Appellant's argument that the Designation Provision is somehow different from other designation provisions in bankruptcy cases was not raised in the Bankruptcy Court and is incorrect. As CSC points out, Appellant acknowledges that routinely approved sales of designation rights "permit a third party to instruct the debtor to assume and assign a contract that the third party wishes to acquire through a bankruptcy sale," (Civ. No. 17-606, D.I. 11 at 17). Appellant seems to imply that something different happened in this case but fails to identify the distinction. The court finds none. Here, third party CSC was sold the right to instruct the Debtors to assume and assign the contracts with Appellant, thereby providing flexibility to the buyer, adding value to the Debtors' estate, and minimizing administrative expenses.

### 2. There Was No Violation of Appellant's Due Process Rights

Appellant contends that Debtors failed to give adequate notice that Debtors intended to alter the procedures in the Bid Procedures Order and that the Bankruptcy Court erred by allowing the assignment of its executory contracts without proper notice. (*See* Civ. No. 17-606, D.I. 11 at 4). According to Appellant, "the 'designation rights' included in the amended APA completely upended the procedures that had been in place since the Bid Procedures Order was entered months earlier," and "were not included in any public filing until the Debtors filed a "Notice of Successful Bidder" . . . on February 20, 2017 – one business day prior to the Sale Hearing." (*See id.* at 19). "The inclusion of designation rights was buried in the amended APA, and no effort was made to notify counterparties that their rights under the Bid Procedures Order were modified." *Id.* "Alteration of [Appellant's] rights without notice is a denial of due process and fundamentally unfair, particularly when it deprived [Appellant] of the opportunity to mitigate its losses in the event of rejection.' (*Id.* at 19). According to Appellant, if the original sale motion had included

designation rights, Appellant could have filed a motion under § 365(d)(2)[19] seeking a deadline for the Debtors to assume or reject, which, if granted, might have allowed Appellant to avoid expensive renewals with its vendors constituting significant long-term liabilities. (*See id.* at 20). "It is fundamentally unfair to force [Appellant] to provide services post-petition (despite a significant pre-petition breach) when delayed rejection causes [Appellant] additional damage." (*Id.*)

Appellant's notice argument is unavailing. The addition of the Designation Provision did not violate Appellant's due process rights because its counsel had an opportunity to review the APA and Sale Order, appear at the Sale Hearing, and in fact reserved Appellant's rights to object to same. (*See* SA-168, 2/13/2017 Hr'g Tr. at 22:14-23:15; KA478 at ¶ 2). Indeed, Appellant exercised its right to object by filing the Motion to Compel on April 13, 2017. The court agrees with CSC that Appellant's decision to wait more than two months before filing its Motion to Compel was its own. The court finds Appellant's constitutional due process rights were not violated because it had actual notice of the Designation Provision and the opportunity to object. *See, e.g.*, *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010); *In re Guterl Special Steel Corp.*, 316 B.R. 843, 852 (Bankr. W.D. Pa. 2004) (where notice of hearing is served on creditor's attorney of record at the time notice and application were filed, creditors due process rights were not violated).

The court must also reject Appellant's other arguments based on prejudice. Appellant argues that the Designation Provision prejudiced its ability to file "a motion under section 352(d)(2) to seek an order setting a deadline for the debtor to assume or reject the Komodo Cloud

---

[19] "[T]he court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease"). 11 U.S.C. § 365(d)(2); *see also Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1216 (7th Cir. 1984) ("A party who cannot afford the uncertainty during the pendency of the reorganization may request the bankruptcy court to order the debtor to decide whether to assume or reject the contract within a specified period.").

contracts" and that it was "denied the opportunity to seek protections regarding Debtors' plan to give the buyer access to [Appellant'] computer systems without assignment of the underlying contracts." However, contract counterparties can always seek such relief, and nothing in the Sale Order or any other document had any effect on that right. If Appellant faced prejudice from delay in the Debtors' decision to assume or reject as a result of the Designation Provision, it could have asked for protections under section 365 of the Bankruptcy Code at any time. Appellant's decision to never exercise those rights cannot constitute prejudice. Finally, Appellant claims it was "forced" to allow its contract with a vendor to renew for a 36-month period in "early 2017." (D.I. 11 at 9, 20). But Appellant's decision to enter into a contract with a vendor is irrelevant because Appellant never had any legal basis to presume that its contracts would be assumed and assigned. (*See* Civ. No. 17-606, D.I. 14 at 8-10 (describing the numerous notices informing Appellant of the possibility that its contracts would not be assumed and assigned)).

## 3. Appellant's Estoppel Argument Is Unavailing

Appellant had argued below that, if the Bankruptcy Court declined to compel assumption under the Bidding Procedures Order, Debtors/CSC should be estopped from using its designation rights to reject Appellant's contracts. Appellant argues that "estoppel is appropriate when rejection of an executory contract is marred by bad faith or when it would be inequitable, and Appellant asked the Bankruptcy Court to set an evidentiary hearing on this issue." (Civ. No. 17-606, D.I. 11 at 21). Appellant contends that the Bankruptcy Court erred in ruling that, as a matter of law, CSC could not be estopped from designating Appellant's contracts for rejection. (*See id.* at 4). According to Appellant, the Bankruptcy Court erroneously ruled that, as a matter of law, improper conduct by Debtor/CSC could never support estoppel as a remedy. (*Id.*) Appellant argues that a debtor may be estopped from rejecting an executory contract. Appellant cites the Ninth Circuit *Chi-Feng Huang* case in support of its position. (*See id.* at 22-23 (citing *In re Chi-Feng Huang*,

23 B.R. 798, 801 (B.A.P. 9th Cir. 1982) ("it is proper for the court to refuse to authorize rejection of a lease or executory contract where the party whose contract is to be rejected would be damaged disproportionately to any benefit to be derived by the general creditors of the estate as for example where most of the 'benefit' of rejection of the contract would be captured by a third party at the expense of the unsecured creditors."). Appellant further argues that good cause exists to set an evidentiary hearing. Appellant cites several declarations which together support its allegations that CSC used its "designation rights" and the time allotted for designation in bad faith. According to Appellant, CSC exploited these rights to make unauthorized clones of Appellant's proprietary software. (*Id.* at 23-28).

Appellant's argument that the Debtors and CSC can be "estopped from using [the] designation rights to reject [Appellant's] contracts," is unavailing. As CSC correctly argues, Appellant's failure to appeal the Rejection Order moots any controversy regarding the rejection of its contracts. Moreover, Appellant cites no authority to support such extraordinary relief. None of the cases cited by Appellant hold that a debtor can be estopped from rejecting a contract based upon the debtor's alleged conduct. While *Chi-Feng* addressed a court's refusal to approve the rejection of a contract, Appellant's reliance on that case is misplaced. In that case, the bankruptcy appellate panel *reversed* the bankruptcy court's refusal to authorize the rejection of a contract, finding that the counterparty's "disappointed" expectations were not "sufficient grounds standing alone to deny the trustee permission to reject." *Id.* at 881.

## IV. CONCLUSION

The Bankruptcy Court's interpretation of the fee-shifting provision in the MSA was consistent with Indiana law. Because Appellant's cited authorities are neither persuasive nor binding, the court finds no error in the Bankruptcy Court's determination that Appellant did not meet the definition of "prevailing party" in the MSA and, therefore, that an award of attorneys'

27

fees was not required. The court further finds no error in the Bankruptcy Court's decision to enter the Compel Order.[20] For the reasons set forth herein, the court will affirm the Withdrawal Order and the Compel Order. A separate order follows.

Dated: September 1 , 2018

UNITED STATES DISTRICT JUDGE

---

[20] Because the court affirms the Compel Order, the court does not reach CSC's persuasive arguments that the Compel Order appeal should be dismissed as moot. (*See* Civ. No. 17-606, D.I. 14 at 20-26). CSC argues that "[t]he Bankruptcy Court's entry of the Dismissal Order renders the appeal moot because once the Chapter 11 Cases were dismissed, the assumption and assignment of Komodo's contracts on remand is no longer possible as there is no debtor to assume or assign the contracts." (*Id.* at 21). "The rights associated with the rejection, assumption, and assignment of executory contracts are created by section 365 of the Bankruptcy Code and are therefore "dependent upon the operation of the bankruptcy law." (*Id.* at 22). Additionally, CSC argues that entry of the Rejection Order mooted the appeal. "[T]he Rejection Order, which became final and non-appealable, finally decided the issue at the core of Komodo's appeal. In the Rejection Order, the Bankruptcy Court ordered that Komodo's contracts, including the MSA and FlexCompute Contract, were rejected as of May 1, 2017. . . Because Komodo did not timely appeal the Rejection Order, it became final and non-appealable under Bankruptcy Rule 8002(a), resolving the question of assumption or rejection definitively." (*Id.* at 23). Finally, CSC argues that the appeal of the Compel Order is statutorily moot under § 363(m). "In the Third Circuit, an appeal is moot pursuant to section 363(m) if (1) appellant does not obtain a stay of the sale order, and (2) the appellate court finds that reversal or modification of such order would affect the validity of the sale." (*Id.* at 24). "Here, the first condition of the statutory mootness test is met because Komodo did not seek a stay pending appeal." (*Id.* at 25). "As to the second condition, Komodo appears to seek to upend the bargain struck between the Debtors and CSC by forcing the assumption and assignment of its contracts to a buyer that neither wants nor needs them. This would require CSC to incur significant unanticipated liabilities that were not contemplated as part of the Sale." (*Id.*)

28